TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-99-00205-CV







Tsumi, Inc. and Cheryl Eckhom, Appellants



v.



Texas Parks and Wildlife Department and Parks and Wildlife Foundation


of Texas, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-14149, HONORABLE DON G. HUMBLE, JUDGE PRESIDING







 The opinion and judgment issued by this Court on January 6, 2000, are withdrawn,
and the following opinion is substituted in lieu thereof. 

 Appellants Tsumi, Inc. and Cheryl Eckhom (1) appeal the district court's order
granting a plea to the jurisdiction filed by appellee Texas Parks and Wildlife Department. (2) In a
single issue, Tsumi contends that the district court erred in granting the Department's plea to the
jurisdiction because the Department consented to suit and waived its sovereign immunity from
suit. We affirm the district court's order.


FACTS AND PROCEDURAL BACKGROUND

 From 1993 through 1997, Tsumi and the Department operated under an oral
agreement for the development, layout, production, and marketing of the Department's mail-order
gift catalogs. Many of the items included in the catalogs were developed or supplied by Tsumi. 
For years 1995 and 1996, Tsumi designed the layout, developed the products, and supplied an
average of over 85% of the products for four catalogs. Tsumi acknowledges that it was fully
compensated for these goods and services. According to its first amended petition, Tsumi
"tendered performance of services and performed fully and repeatedly throughout the contractual
relationship with Defendant." At some point in 1997, Tsumi began work on the Department's
1997 Christmas catalog. In its petition, (3) Tsumi alleges that plaintiffs "have performed their
obligations under the contract by, among other things, designing catalog layout and developing
products therefor." They further allege that the Department repudiated the contract and failed to
pay for unspecified services.

 Tsumi brought suit against the Department for claims based on a breach of the
alleged oral contract, defamation, fraud, and misappropriation. The Department filed a plea to
the jurisdiction asserting that its sovereign immunity from suit deprived the trial court of
jurisdiction. The trial court agreed and dismissed Tsumi's claims for lack of jurisdiction. On
appeal, Tsumi challenges in a single issue the dismissal of its petition on the ground that the
Department waived immunity from suit. (4)


STANDARD OF REVIEW

 Because the determination of subject matter jurisdiction is a question of law, we
review that determination de novo. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998). We determine the district court's jurisdiction from the good faith factual allegations
made by the plaintiff. See Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex.
1949). Unless the defendant pleads and proves that the plaintiff's allegations were fraudulently
made to confer jurisdiction, they are accepted as true. See Continental Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 449 (Tex. 1996). Because the Department has not asserted any such
fraudulent pleading here, we accept Tsumi's allegations as true; our recitation of the facts is taken
from Tsumi's pleadings.

 The plaintiff bears the burden of alleging facts affirmatively showing that the
district court has subject matter jurisdiction. See Texas Ass'n of Business v. Texas Air Control
Bd., 852 S.W.2d 440, 446 (Tex. 1993). A plea to the jurisdiction contests the district court's
authority to determine the subject matter of the cause of action. See Amador v. San Antonio State
Hosp., 993 S.W.2d 253, 254 (Tex. App.--San Antonio 1999, pet. denied); State v. Benavides, 772
S.W.2d 271, 273 (Tex. App.--Corpus Christi 1989, writ denied).

 Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the
district court must liberally construe the allegations in favor of jurisdiction. See Peek v.
Equipment Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989). When reviewing the district court's
dismissal, we construe the pleadings in favor of the pleader and look to the pleader's intent. See
Texas Ass'n of Business, 852 S.W.2d at 446. 


DISCUSSION

Sovereign Immunity

 Sovereign immunity consists of two basic principles of law: immunity from
liability and immunity from suit. Unless waived, the state has immunity from liability. (5) 
Immunity from liability does not affect a court's jurisdiction to hear a case. See Davis v. City of
San Antonio, 752 S.W.2d 518, 520 (Tex. 1988). Immunity from suit, on the other hand, bars an
action against the state unless the state expressly consents to the suit. Because governmental
immunity from suit defeats a trial court's subject matter jurisdiction, it is properly asserted in a
plea to the jurisdiction. See Texas Dep't of Transp. v. Jones, 43 Tex. Sup. Ct. J. 143, 144 (Dec.
2, 1999); Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Missouri Pac. R.R.
Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970). The party suing the
governmental entity must establish the state's consent, which may be alleged either by reference
to a statute or to express legislative permission. See Jones, 43 Tex. Sup. Ct. J. at 144; Missouri
Pac. R.R. Co., 453 S.W.2d at 814. 

 Tsumi acknowledges that it did not seek legislative permission to sue. Appellants
also do not contend that statutory authority exists that would constitute consent for them to bring
their lawsuit. Relying upon Federal Sign and this Court's decision in Aer-Aerotron, Inc. v. Texas
Department of Transportation, 997 S.W.2d 687 (Tex. App.--Austin 1999, pet. filed), Tsumi
alleges instead that the Department has consented to be sued and has thus waived sovereign
immunity by contracting with Tsumi and accepting its goods and services and full performance
under the contract. The issue presented, then, is whether Tsumi has met its burden of pleading
facts demonstrating that the State has waived its immunity by conduct.


Federal Sign

 In analyzing whether a state entity waives immunity in a contractual dispute by
conduct, we turn first to Federal Sign. In that case, Texas Southern University ("TSU") accepted
Federal Sign's bid to construct and deliver basketball scoreboards to TSU. See 951 S.W.2d at
403. After accepting Federal Sign's bid for the construction and installation of the scoreboards,
TSU instructed Federal Sign to begin work immediately so that the scoreboards would be finished
as soon as possible. Seven months later, before the scoreboards were delivered, TSU advised
Federal Sign that it had decided to secure the scoreboards from another source. Later, TSU
contracted with another company for the scoreboards. Federal Sign sued for breach of contract,
asserting damages for lost profits and expenses. After a jury trial, the trial court rendered
judgment in favor of Federal Sign. On appeal, the supreme court concluded that the suit was
barred by sovereign immunity.

 Starting from the premise that "sovereign immunity, unless waived, protects the
State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent
to sue the State," id. at 405, Justice Baker, writing for the majority of the court, stated: "[A]
private citizen must have legislative consent to sue the State on a breach of contract claim. The
act of contracting does not waive the State's immunity from suit." Id. at 408. Deferring instead
to the legislature, the court concluded that "it is the Legislature's province to modify sovereign
immunity if it is inclined to do so and therefore [we] refuse Federal Sign's invitation to undertake
the task." Id. at 409. The court held "that sovereign immunity from suit without legislative
consent applies to contract claims against the State." Id. at 412.

 In an oft-cited footnote, however, the court further observed that "[t]here may be
other circumstances where the State may waive its immunity by conduct other than simply
executing a contract so that it is not always immune from suit when it contracts." Id. at 408 n.1
(emphasis added). Despite Federal Sign's allegations of waiver by TSU's conduct in repudiating
the contract seven months into the project, the court declined to find waiver. In a concurring
opinion, four members of the court suggested that a different result might have pertained if: (i)
Federal Sign had installed the scoreboards that were the subject of the contract and TSU, the state
entity, refused to pay the agreed price, (ii) TSU had accepted the scoreboards, acknowledged that
Federal Sign had fully complied with the contract but refused to pay as agreed upon, or (iii) TSU
refused to pay to force Federal Sign to make a concession on another contract. See id. at 412. 
The concurring justices further stated: "[T]oday's decision does not hold that the State is always
immune from suit for breach of contract absent legislative consent; it holds only that the mere
execution of a contract for goods and services, without more, does not waive immunity from
suit." Id. at 413. Thus, the court left for another day the decision on the type of conduct by
which a State may waive its immunity.

 Appellants acknowledge that the simple act of entering into a contract is not
sufficient to waive immunity. Appellants further recognize that while the supreme court has
addressed the possibility of waiver by conduct of the state entity, that court has yet to find it in
a decided case. They direct us, instead, to the decisions of three courts of appeals, including this
one, that have abrogated sovereign immunity in contract cases involving agencies. (6) 

 In Aer-Aerotron, pursuant to a competitive bidding process and a written contract
with the Texas Department of Transportation, Aerotron supplied 75 base-station radios and 50
remote-control radios for a total contract amount of $468,550. See 997 S.W.2d at 688. The
contract required Aerotron to ship a sample of each radio to the Department, which then had up
to 30 days to test them for conformity to the contract specifications. Aerotron alleged that it
shipped the radios and the Department accepted them. In the first year of the contract, the
Department increased its purchase order from 125 to 300, raising the total contract price to
$993,900. The Department first promised payment, then delayed it, and then failed to pay,
forcing Aerotron to file bankruptcy. Aerotron alleged in its petition that the State, by accepting
goods and services, extending the term of the contract, increasing its orders, twice promising to
pay the balance due but failing to do so, and requesting and receiving technical modifications and
assistance, waived its immunity from suit for breach of contract when it engaged in actions that
"fully implicated it in the performance of the contract." Id. 

 This Court interpreted Federal Sign to mean that "only the legislature can generally
pronounce that the mere act of signing a contract abrogates the State's immunity from suit, but
an entity of the State may waive its immunity with regard to a particular contract if warranted by
its conduct." Id. at 691. The Court applied its interpretation of Federal Sign to the facts of Aer-Aerotron and concluded that the Department by its conduct waived its immunity from suit for
breach of contract. See id. at 692. The Court stated:


The Department did more than sign this contract. Its actions over a period of two
and a half years fully implicated it in the performance of the contract: the
Department approved the radios after testing the samples; it twice extended the
term of the contract; it more than trebled the number of radio units ordered
throughout the contract term; it accepted Aerotron's technical services; and it
acknowledged its financial obligations by twice promising to pay the balance due
to Aerotron. Aerotron filled the ever-increasing orders, made more than nine
modifications that were not required under the contract specifications, helped the
Department install equipment in all districts, and stationed a technician in Texas
to monitor the operation of its equipment for the Department.



Id. at 691-92. 

 In IT-Davy, the contractor alleged in its pleadings that it fully performed the
contract and even executed additional work at the express request of the Commission, that the
Commission accepted this work, and that the Commission failed to pay for the accepted services. 
See 998 S.W.2d 898, 902 (Tex. App.--Austin 1999, pet. filed). The contractor pleaded that it
conferred a benefit on the agency and the agency accepted that benefit. See id. Likewise, in
Little-Tex, (7) Araserve, (8) and Obayashi, (9) the contracting party alleged that it fully performed or that
the agency accepted goods and services and engaged in conduct that would produce an injustice
were the agency permitted to walk away. The conduct pleaded, then, fell beyond mere execution
of the contract and arguably within the three hypotheticals in the concurring opinion of Federal
Sign.

 Drawing on the three hypotheticals in the concurring opinion of Federal Sign,
Tsumi contends on appeal that it has alleged that the Department engaged in conduct here
sufficient to waive its immunity: "Precisely such full performance, delivery of goods and
services, and repeated acceptance of all benefits and performance occurred in [this] case." Even
taking the allegations of Tsumi's petition as true and construing the pleadings in a liberal fashion
as we are constrained to do, we conclude that the allegations contained in the petition fail to allege
facts sufficient to sustain jurisdiction.


Tsumi's Allegations in the Petition

 In the present case, Tsumi alleges that it has operated since 1993 under an oral
contract with the Department. (10) In its brief on appeal, Tsumi contends that the duration of the
contract between Tsumi and the Department was for a period of "around four years." Appellants
acknowledge that they were fully compensated for their services through 1996. Other than an
allegation that the parties entered into a contract for work on the 1997 Christmas catalog and that
appellants performed their obligations under the contract by "designing Catalog layout and
developing products therefor," none of the terms of the oral contract are set forth in the petition. 
The dispute, then, turns on the conduct of the parties in 1997. But on this matter, the petition is
entirely silent.

 Thus, Tsumi alleges that it "began" the development, layout, and marketing of the
1997 catalog, and that it entered into "several agreements with third-party vendors" for the
marketing and operation of the catalog. Without specifying a time period or whether any goods
or services were actually delivered and accepted, they then allege that the Department "untimely
indicated" an unwillingness to complete the production and marketing of the catalog. Unlike
Aerotron, Tsumi has not alleged that it completed performance on the 1997 catalog and that the
Department refused to pay the agreed price. Nor is there any allegation that the Department
accepted goods and services, acknowledged that Tsumi had fully complied with the contract, and
then refused to pay as agreed upon. Accordingly, we overrule appellant's issue.


CONCLUSION

 We conclude that appellants did not allege waiver by conduct sufficient to invoke
the district court's jurisdiction. Having overruled appellant's issue on appeal, we affirm the
district court's order granting the Department's plea to the jurisdiction.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: February 25, 2000

Publish
1. For convenience, we will refer to Tsumi, Inc. and Cheryl Eckhom, Tsumi's majority owner,
collectively as "Tsumi" or "appellants."
2. Parks and Wildlife Foundation of Texas, Inc. filed a separate plea to the jurisdiction, but
it withdrew its plea; therefore, the district court's order concerned only the Department's plea.
3. Tsumi's original petition was filed on December 21, 1998. The Department filed its
original answer and plea to the jurisdiction on January 15, 1999. Tsumi filed its First Amended
Petition on March 9, 1999. A hearing was held on the Department's plea to the jurisdiction on
March 10, and on March 12, the district court sustained the plea and dismissed the case for want
of jurisdiction. Tsumi did not seek to further amend its petition at the hearing or thereafter and
does not contend on appeal that it was denied that opportunity.
4. Tsumi challenges only the dismissal of the contract claim.
5. See Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Missouri Pac. R.R.
Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970); Tex. Civ. Prac. & Rem.
Code Ann. § 107.002(b) (West Supp. 1994) (legislative resolution granting permission to sue the
state does not waive immunity from liability). 
6. See Texas Natural Resource Conservation Comm'n v. IT-Davy, 998 S.W.2d 898 (Tex.
App.--Austin 1999, pet. filed); Aer-Aerotron, Inc. v. Texas Dep't of Transp., 997 S.W.2d 687
(Tex. App.--Austin 1999, pet. filed); Little-Tex Insulation Co. v. General Servs. Comm'n, 997
S.W.2d 358 (Tex. App.--Austin 1999, pet. filed); Texas S. Univ. v. Araserve Campus Dining
Servs., 981 S.W.2d 929 (Tex. App.--Houston [1st Dist.] 1998, pet. denied); Alamo Community
College Dist. v. Obayashi Corp., 980 S.W.2d 745 (Tex. App.--San Antonio 1998, pet. denied). 
7. In Little-Tex, this Court described the acceptance of benefits and waiver of immunity as akin
to the doctrine of estoppel. The Court stated: "We believe receipt and acceptance by the State of
a benefit from a contracting party is wholly inconsistent with the State's using its immunity from
suit to shield itself from a legal obligation to pay for the value of the benefit. Indeed, such a
scenario arguably produces a manifest injustice that cannot in good conscience be tolerated." 997
S.W.2d at 364.
8. In Araserve, the plaintiff company contracted to provide and did deliver $122,778.50 in food
and services that TSU requested but refused to pay for. See 981 S.W.2d at 930. Araserve sued
for the value of the accepted goods and services. See id.
9. In Obayashi, Alamo Community College District entered into a contract with Obayashi
Corporation for construction relating to a drainage project at the San Antonio College campus. 
See 980 S.W.2d at 746. After Obayashi completed the contract work for the base contract price
of $983,000, the District refused to pay for equitable adjustments made that were necessary to
complete the job. See id. at 747. The court found statutory consent to suit but, in dicta, it also
found waiver of sovereign immunity by the District's conduct in instructing Obayashi to exclude
certain necessary costs from its bid, establishing a contractual means to cover the costs with an
equitable adjustment clause, and accepting Obayashi's performance as full and satisfactory.
10. The parties agree that any contract between the parties was oral and was not the result of
a competitive bidding process. Tsumi alleges in its petition that the agreement remained oral
because the Department wanted to avoid "bidding the job out." The legality or enforceability of
an oral contract with the State is not before the Court. See Tex. Gov't Code Ann. § 2155.063
(West 2000) (requiring competitive bidding for the purchase of or contract for goods or services).



-decoration: underline"> 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: February 25, 2000

Publish
1. For convenience, we will refer to Tsumi, Inc. and Cheryl Eckhom, Tsumi's majority owner,
collectively as "Tsumi" or "appellants."
2. Parks and Wildlife Foundation of Texas, Inc. filed a separate plea to the jurisdiction, but
it withdrew its plea; therefore, the district court's order concerned only the Department's plea.
3. Tsumi's original petition was filed on December 21, 1998. The Department filed its
original answer and plea to the jurisdiction on January 15, 1999. Tsumi filed its First Amended
Petition on March 9, 1999. A hearing was held on the Department's plea to the jurisdiction on
March 10, and on March 12, the district court sustained the plea and dismissed the case for want
of jurisdiction. Tsumi did not seek to further amend its petition at the hearing or thereafter and
does not contend on appeal that it was denied that opportunity.
4. Tsumi challenges only the dismissal of the contract claim.
5. See Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Missouri Pac. R.R.
Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970); Tex. Civ. Prac. & Rem.
Code Ann. § 107.002(b) (West Supp. 1994) (legislative resolution granting permission to sue the
state does not waive immunity from liability). 
6. See Texas Natural Resource Conservation Comm'n v. IT-Davy, 998 S.W.2d 898 (Tex.
App.--Austin 1999, pet. filed); Aer-Aerotron, Inc. v. Texas Dep't of Transp., 997 S.W.2d 687
(Tex. App.--Austin 1999, pet. filed); Little-Tex Insulation Co. v. General Servs. Comm'n, 997
S.W.2d 358 (Tex. App.--Austin 1999, pet. filed); Texas S. Univ. v. Araserve Campus Dining
Servs., 981 S.W.2d 929 (Tex. App.--Houston [1st Dist.] 1998, pet. denied); Alamo Community
College Dist. v. Obayashi Corp., 980 S.W.2d 745 (Tex. App.--San Antonio 1998, pet. denied). 
7. In Little-Tex, this Court described the acceptance of benefits and waiver of immunity as akin
to the doctrine of estoppel. The Court stated: "We believe receipt and acceptance by the State of
a benefit from a contracting party is wholly inconsistent with the State's using its immunity from
suit to shield itself from a legal obligation to pay for the value of the benefit. Indeed, such a
scenario arguably produces a manifest injustice that cannot in good conscience be tolerated." 997
S.W.2d at 364.
8. In Araserve, the plaintiff company contracted to provide and did deliver $122,778.50 in food
and services that TSU req